## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### CARPENTER V. GOLD.

### Absent, *Hinton*, J.

#### January 7th, 1892.

1. WATER-COURSE.—*Riparian owners—Ad filum aquæ.*—Every person through or past whose land a natural water-course runs, has a right inseparably annexed to the soil and passing with it, to use it reasonably, and no proprietor above or below has a right to obstruct it; and every riparian owner owns to the middle of a non-navigable stream.

2. DIVERSION OF WATER-COURSE—*Relief.*—Where the boundary between complainant's and defendant's tracts was a stream which supplied both with water, and latter diverted the water by means of a ditch, depriving former of access to it, and thereby greatly and irreparably injuring him;

HELD:

He is entitled to equitable relief.

Appeal from decree of circuit court of Clarke county, rendered October 10th, 1888, in a suit wherein Thomas D. Gold was complainant, and the appellants, James N. Carpenter, trustee, and Mary F. Carpenter, his wife, were defendants. The decree being adverse to the defendants, they obtained an appeal to this court. Opinion states the case.

*Marshall McCormick,* for appellants.

*S. J. C. Moore,* for appellee.

LEWIS, P., delivered the opinion of the court.

The appellee filed his bill in the court below for relief against an alleged nuisance. He alleges in the bill that he is the owner of a certain parcel of land, situate in Clarke county, adjoining a tract belonging to the defendant, James N. Carpenter, trustee for his wife, Mary F. Carpenter, of which tract the appellee's land was formerly a part; that one of the boundary lines of the two tracts runs a considerable distance with a natural water-course, which has supplied both tracts with water for stock and other agricultural purposes from the date of appellee's purchase, nearly fifteen years before the commencement of the suit.

The bill then states, in substance, that the said James N. Carpenter, a short while before the filing of the bill, cut a ditch on his land, which has diverted the water from its natural channel, and deprived the plaintiff of access to it, in consequence of which the plaintiff has been greatly and irreparably injured, and for which, from the continuous character of the injury, there is no adequate remedy at law. And the prayer of the bill is for an injunction, and that the defendants be compelled to restore the water to its natural channel.

The circuit court granted the relief prayed for, and the defendants have appealed.

Their contention is: First, that injunction is not the proper remedy for past injuries; and, secondly, that the stream in question neither naturally passes through, nor along the boundary of, the appellee's land.

The first of these propositions is a question of law; the second is a pure question of fact.

By the general law applicable to running streams, every person through or past whose land a natural water-course runs, has a right to the reasonable use of the water, and no proprietor, above or below, has a right to divert or obstruct it. This right is not an easement, but is inseparably annexed to the soil, and passes with it. It is, moreover, a principle of the common law that every riparian proprietor on either side of a

stream not navigable *prima facie* owns to the middle or thread of the stream (*usque ad filum aquæ*), and has an equal right to the use of the water without diminution or alteration. Ang., Wat. Cours. (7th Ed.), secs. 92–95; 3 Kent, Comm., 439; *Atchison v. Peterson*, 20 Wall. 507; *Hardin v. Jordan*, 140 U. S. 371.

Accordingly, the diversion of a natural stream is a private nuisance, and, therefore, from an early period, courts of equity have granted relief by way of injunction, in such cases, at the suit of the injured party. The jurisdiction is founded upon the notion of restraining irreparable mischief, or of preventing vexatious litigation, or a multiplicity of suits. And where the complainant's legal right is clear, and the case is one " of strong and imperious necessity "; or, in other words, where the right is clear, and its violation palpable, and the complainant has not slept upon his rights, equity will ordinarily interfere, although the right has not been established at law; and in such a case a preliminary mandatory injunction, as it is called, will be granted, which is so framed that it restrains the defendant from permitting his previous act to operate, and, therefore, virtually compels him to undo it—that is, to restore the water to its natural channel. 1 High, Inj. (3rd Ed.), sec. 804; *Gardner v. Newburgh*, 2 Johns, Ch. 162; *Corning v. Troy Factory*, 40 N. Y. 191; *Webb v. Portland Manf'g Co.*, 3 Summ. 189; *Hanna v. Clark*, 31 Gratt. 36; *Parker v. Manf'g Co.*, 2 Black, 545; *Switzer v. McCullock*, 76 Va. 777.

In *Durell v. Pritchard* the Master of the Rolls, relying on *Dure v. Guest*, 1 Myl & C. 516, laid down the rule that a mandatory injunction would not be granted where the act complained of was complete before the filing of the bill. But on appeal this ruling was reversed. L. R., 1 Ch. App. 244. And the rule is now fully established, as already observed, that in cases like the present, where the facts are clearly established and the injury is real, and the plaintiff acts promptly upon acquiring knowledge of the defendant's proceeding, an inter-

locutory mandatory injunction will be granted, although the
act complained of was fully completed before the suit was com-
menced. If relief is deferred until the final hearing, and then
granted, the decree is, in fact, an ordinary decree for an abate-
ment, and is in no proper sense an injunction at all. 3 Pom.
Eq., sec. 1359.

It is clear, therefore, that the bill in the present case states a
proper case for the equitable relief prayed for, and that the
objection to it, which was taken by demurrer, was rightly
overruled.

But as to whether the case thus stated is proved with the
requisite clearness, there is a diversity of views. The
appellee's land was conveyed to him by deed dated November
20, 1868, to which deed Special Commissioner William H.
Moore and the appellants and others were parties of the first
part. The land was conveyed by metes and bounds, as follows :
"Beginning at a stone corner to the timber lot laid off for
Thomas E. Gold; thence S. 37° 19' W. 226 poles to a stone
corner to Funsteen; thence with his line N. 74¼° W. 83 poles
to a small walnut in the fence corner on the east side of the
run; thence N. 24½° E. 50.8 poles to a stone in the water near
the head of the run," &c.

In the progress of the cause several surveys were made, one
of which was by S. Howell Brown, a surveyor of over forty
years' experience, and another by J. C. Fletcher, the county
surveyor. The former testified that he had no difficulty in
running the lines according to the description given in the deed,
and that the stream mentioned in the bill was the boundary-
line between the parties for some distance. There was also
evidence tending to show that up to the time of the diversion
of the stream complained of the stream had been regarded by
the parties themselves as the boundary-line, and that the line-
fence was so arranged as to give access to the stream both by
the plaintiff and defendants for the purpose of supplying water
for stock, etc. On the other hand, according to Fletcher's

survey, the stream is not on the appellee's land, and does not touch it at all.

In this state of the evidence the court is equally divided in opinion as to whether the plaintiff is entitled to the relief prayed for, and, therefore, upon this branch of the case no opinion of the court can be given. The consequence is that the decree in this particular must be affirmed by an equally-divided court; and it is so ordered.

DECREE AFFIRMED.