Syllabus.

## Richmond.

## Virginia Hot Springs Company v. Henry W. Hoover, et al.

### November 12, 1925.

1. Parties—*Misjoinder of Parties—Demurrer.*—In Virginia it is well-settled that misjoinder of parties cannot be taken advantage of by demurrer.

2. Demurrer—*Demurrer Admits Allegations of the Bill.*—Upon demurrer the allegations of the bill must be taken as true.

3. Equity—*Misjoinder of Causes of Action—Suit to Restrain Diversion of a Watercourse—Case at Bar.*—In the instant case, a suit to restrain the diversion of a watercourse by defendant, complainants owned several separate tracts of land but they alleged in their bill, and upon demurrer their allegation must be taken as true, a common right in the waters of the stream as it naturally flows in its accustomed course. Complainants also alleged that their rights had been invaded by one and the same defendant and by one and the same means.

   *Held:* That under such circumstances complainants had a common remedy if they elect to pursue it, and that they might properly join as complainants.

4. Equity—*Joinder of Parties—Distinct and Independent Claims to Relief—Distinct and Independent Parties—Multiplicity of Suits.*—Complainants having distinct and independent claims to relief against a defendant cannot join in a suit for separate relief in each case, but where the claims to relief are not distinctly independent, but the alleged injury is common to all the estates of the complainants, and the result of the act of one and the same defendant, complainants may join in one suit and thus prevent a multiplicity of actions.

5. Equity—*Suit to Restrain Diversion of a Watercourse—Evidence upon which a Final Hearing Could be Had—Case at Bar.*—In a suit to restrain the diversion of a watercourse, it was assigned as error that there was no evidence upon which a final hearing could be had. The case was heard and the injunction against the diversion perpetuated upon affidavits and depositions taken after due notice on behalf of both the complainants and respondents.

   *Held:* That there was no merit in the assignment.

6. WATERS AND WATERCOURSES—*Diversion of Watercourse to the Injury of Lower Riparian Owners—Conflict of Evidence—Case at Bar.*—In the instant case, a suit by lower riparian owners to enjoin the diversion of a watercourse, there was some conflict of evidence but the weight of evidence supports the contention of complainants that they would be greatly damaged by the diversion of the water.

Held: That the decree of the lower court perpetually enjoining the defendant from diverting the watercourse could not be disturbed on appeal.

7. WATERS AND WATERCOURSES—*Riparian Rights—Use of Water—Diversion.*—A proprietor may make any reasonable use of the water of the stream in connection with his riparian estate and for lawful purposes within the watershed, provided he leaves the current diminished by no more than is reasonable, having regard for the like right to enjoy the common property of other riparian owners. If he diverts the water to a point outside the watershed or upon a disconnected estate, the only question is whether there is actual injury to the lower estate for any present or future reasonable use. The diversion alone, without evidence of such damage, does not warrant a recovery even of nominal damages.

8. WATERS AND WATERCOURSES—*Suit to Enjoin Diversion of Waters—Plan Under which Lower Riparian Owners would not be Injured—Point Raised for the First Time on Appeal.*—In the instant case, a suit to enjoin the diversion of a watercourse, counsel for defendants, in their petition for an appeal, presented a plan to pipe the water in such a way as to give complainants their accustomed supply of water from the watercourse and at the same time supply the needs of defendant. No such proposition was raised by the pleadings, no evidence taken as to it, and the chancellor could not have considered it.

Held: That the Supreme Court of Appeals could not consider such plan.

Appeal from a decree of the Circuit Court of Bath county. Decree for complainants. Defendant appeals.

*Affirmed.*

The opinion states the case.

*J. T. McAllister, H. H. Byrd* and *Allen, Walsh & Michie,* for the appellant.

*Revercomb & Revercomb,* for the appellees.

CHICHESTER, J., delivered the opinion of the court.

The appeal in this case brings into review a final decree of the Circuit Court of Bath county, perpetually enjoining the Virginia Hot Springs Company, a corporation, its assigns and successors, etc., "from piping the water from the spring on the land of W. H. Smith —so that said water may not be allowed to flow in its usual quantity in the channel in which it has been accustomed to flow."

The bill praying for the injunction was filed by Henry W. Hoover, George L. Sneed, Jasper Cauley and David Cauley. The complainants allege that they own farm lands in Falling Springs valley, riparian to the stream originating in the Smith spring mentioned in the decree. The Falling Springs valley lies between the Warm Springs mountain on the east and the Little mountain on the west. They allege that the only water that supplies their farm lands is the stream flowing from the Smith spring, and united therewith a small spring which has its origin on the east side of Little mountain. The Smith spring is a very bold spring, affording a constant flow at all seasons of the year of approximately 40,000 gallons of water a day.

The Virginia Hot Springs Company operates a hotel resort for guests at Hot Springs, Va., and has contracted with W. H. Smith to pipe water from the Smith spring to its hotel resort, which is nonriparian to the Smith spring and the stream flowing therefrom.

Complainants allege that it is the intention of the company, unless prevented from doing so, to consume all or a greater portion of the water from the spring, to divert it from its natural channel where it has been accustomed to flow, and that it is constructing a pipe line to carry the water to the Virginia Hot Springs, five miles from the Smith spring, and on a different water shed therefrom.

Complainants admit that the Virginia Hot Springs Company, as assignee of W. H. Smith, is entitled to a reasonable use of the water from the spring, that is, in the same manner in which W. H. Smith had a right to use it. W. H. Smith is a small farmer, who uses the water in a very limited way for domestic purposes, while the Hot Springs Company purposes to consume all or nearly all of the water, the pipes which it is laying down being capable of conveying to the hotel property the full flow of the spring.

An injunction was prayed for which the judge granted temporarily on July 14, 1923, and on June 21, 1924, the circuit court entered a permanent injunction order, as stated heretofore.

The answer of the Hot Springs Company alleges that there are other never failing springs which supply the stream through the lands of complainants, and that during the usual dry portion of the year no part of the waters from the Smith spring ever reach the lands of complainants; that during the dry season when the water from the Mustoe land just above Hoover's, reaches Hoover's land, below that point, the bed of the stream through the lands of Sneed and the Cauleys is absolutely dry until the wet season begins.

It alleges that respondent will not need and will not use water from the Smith spring except during the dry season of the year, as it has no need of the water except during this season, and that since the water from said spring does not reach complainants at all during the dry season, they will not be damaged by the proposed diversion.

There are three assignments of error.

(1) That the demurrer to the bill was not sustained.

(2) That there was no evidence before the court upon which final hearing could be had.

(3) That the final decree complained of enjoined any diversion of water from a certain spring of water, although the evidence showed uncontrovertedly that a large portion of the water from the spring in question never reaches the lands of the several complainants, and complainants could have no concern or interest in its diversion.

(4) If the failure of the court to pass upon the demurrer be treated as overruling the demurrer, still there is no merit in this assignment.

[1] The contention in the trial court seems to have been that there was a misjoinder of the parties in the bill. It is well settled in this State that misjoinder of parties cannot be taken advantage of by demurrer. *Lee* v. *Mutual Reserve Fund Life Asso.*, 97 Va. 161-62, 33 S. E. 556; *Schmidt, et al.* v. *Wallinger*, 125 Va. 361, 99 S. E. 680; *Carlton* v. *Boudar*, 118 Va. 521, 88 S. E. 174, 4 A. L. R. 1480; Burks Pl. & Pr. (2d ed.), pp. 62-63 and note; Va. Code 1919, sec. 6102.

It was contended in the argument before this court that there was a misjoinder of causes of action. There is no merit in this contention.

[2, 3] The plaintiffs own separate tracts of land, it is true, but they allege in their bill, and upon demurrer their allegation must be taken as true, a common right in the waters of the stream as it naturally flows in its accustomed course. They allege that their rights have been invaded by one and the same defendant and by one and the same means. Under such circumstances, they have a common remedy if they elect to pursue it, and they may properly join as plaintiffs. *Bosher, et al.* v. *R. & H. Land Co.*, 89 Va. at p. 464, 16 S. E. 360, 37 Am. St. Rep. 879; *Ballou* v. *Hopkins*, 4 Gray (Mass.) 324; *Snyder* v. *Cabell*, 29 W. Va. 48, 1 S. E. 241; *Kitchen & Co.* v. *Local Union*, 91 W. Va. 65, 112 S. E. 198.

[4] In *Ballou* v. *Town of Hopkinton, supra,* several mill owners, located at different points on Mill river, sought as joint plaintiffs to enjoin the diversion, waste, etc., of the waters of that river to the injury of their alleged right in the water as it flowed in its natural bed to their respective mills. In overruling the demurrer the Supreme Court of Massachusetts said: "Although the plaintiffs are several owners of separate and distinct mills, injured by the alleged stoppage, diversion and waste of the water of Mill river, and to recover damages for which each owner must bring his several action at law to obtain a remedy for his particular injury, yet they have a joint and common right in the natural flow of the stream, and in the reservoir by which its power is increased, and a joint interest in the remedy, which equity alone can afford, in maintaining a regular flow of the water in the reservoir at suitable and proper times, so as best to subserve the equal rights of them all. The remedy in equity, therefore, would, by one decree in one suit, prevent a multiplicity of actions."

In *Snyder* v. *Cabell, supra,* the court held that two or more persons owning separate and distinct tenements, where the tenements are lessened in value or made uncomfortable as homes by a nuisance, which is a common injury to all, the tenements and their residents may join in a suit to restrain such nuisance.

These authorities are decisive of the question raised here.

The case at bar does not come within the general rule that several complainants having distinct and independent claims to relief against a defendant cannot join in a suit for separate relief in each. Here the claims to relief are not distinct and independent. On the contrary, the alleged injury is common to all

the estates of the complainants, and is the result of the act of one and the same defendant.

[5] (2) There is no merit in the second assignment of error. In the case of *Virginian Railway Co.* v. *Echols*, 117 Va. 183, 83 S. E. 1082, relied on by appellants to support this assignment, a perpetual injunction was granted upon affidavits alone. The case at bar was heard and the injunction perpetuated upon affidavits and depositions taken after due notice on behalf of both the complainants and respondents.

[6] (3) Upon the merits of the case, and as it was heard by the trial court, there was some conflict of evidence, but the weight of the evidence supports the contention of complainants that they would be greatly damaged by the contemplated diversion of the water.

The company contended that, while the flow of water from the Smith spring was constant throughout the year, the evaporation and seepage into the earth are so great that in dry seasons little or no water from the spring reaches the lands of Hoover, whose farm was about 3,600 feet distant from the spring, but who is the nearest complainant thereto, and that none at all reaches the complainant D. W. Cauley, who owns the lands most remote from the spring. There was evidence tending to show that in dry seasons the whole flow of the spring would evaporate or be absorbed by the earth in a distance of approximately 4,000 feet.

On the other hand, there was a great deal of evidence tending to show that the stream of water through complainants' lands was supplied largely and especially in dry weather by the Smith spring, and that the stream had not been dry above Hoover's place but twice in thirty years. The issue of fact as to whether complainants would be damaged by the diversion of the water from the Smith spring in dry weather was thus

·clearly drawn and decided by the learned chancellor in favor of complainants.

[7] There is no dispute as to the law applicable to the case.

The case of *Stratton* v. *Mt. Hermon Boys' School,* 216 Mass. 83, 103 N. E. 87, 49 L. R. A. (N. S.) 57, Ann. Cas. 1915A, 768, cited with approval by this court in *Gordonsville* v. *Zinn,* 129 Va. 542, 560, 106 S. E. 508, 14 A. L. R. 318, was an action for damages for diversion by an upper riparian owner of water to nonriparian land. (The facts there being similar to the facts of the case at bar, since the Hot Springs Company as assignee of Smith became the upper riparian owner.) In that case the court said: "The governing principle of law in a case like the present is this: A proprietor may make any reasonable use of the water of the stream in connection with this riparian estate and for lawful purposes within the water-.shed, provided he leaves the current diminished by no more than is reasonable, having regard for the like ·right to enjoy the common property of other riparian owners. If he diverts the water to a point outside the watershed or upon a disconnected estate, the only ·question is whether there is actual injury to the lower estate for any present or future reasonable use. The diversion alone, without evidence of such damage, does not warrant a recovery even of nominal damages."

Upon the state of facts as narrated above and the law applicable thereto, we cannot say that the conclusion of the trial court was erroneous. Indeed, the evidence, as it stands, sustains the conclusion that the proposed diversion would result in serious injury to complainants.

[8] The learned counsel for the appellants, in their petition for an appeal and in the argument before this

court, presented a very interesting plan, and indulged in a very persuasive argument based thereon, under which it was contended that it would be entirely practical to ascertain the amount of water that actually reached the Hoover farm from the Smith spring, and to pipe the water from the spring to the Hoover line, in this way saving all waste by evaporation and seepage, and thus giving to complainants their accustomed supply of water from the spring, at the same time supplying the needs of appellants.

The difficulty is, that no such proposition was raised by the pleadings, no evidence taken as to it, and the chancellor who decided the case did not and could not have considered it, nor can this court. In the absence of evidence to show, in this case, that it can be worked out as a practical proposition which will avoid damage to complainants, this court will affirm the decree of the circuit court.

*Affirmed.*