# Richmond

## MARY E. HITE, ET ALS. V. TOWN OF LURAY.

April 8, 1940.

Record No. 2232.

Present, All the Justices.

The opinion states the case.

*F. S. Tavenner, Harry R. Taylor* and *Lucas & Hackley,* for the appellants.

*Ford, Keyser & Swetnam,* for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

The bill in this case was filed by the appellee, a municipal corporation, pursuant to the provisions of section 6140a of the Code. The prayer of the bill is that the court construe a deed from Ida L. Brown, conveying to the town of Luray a tract of land containing six and one-half acres, and also construe the *mesne* conveyances from W. E. Lauck to Ida L. Brown, and "determine what rights the Town of Luray acquired in and to Hite's Spring and the waters flowing therefrom and the right the said Town may make of said spring and the waters flowing therefrom."

The facts are agreed upon and it is conceded that the conveyance from W. E. Lauck to Huffman is the common source of title from which the lands and water rights of the appellee and appellants were derived. It is also conceded that a correct construction of the deed of Ida L. Brown to appellee depends upon the proper construction of a deed from W. E. Lauck and wife to David Huffman, bearing date February 28, 1866, granting to Huffman a tract of land containing one hundred and thirty-four acres of land, together with certain other water and property rights on the remaining tract of land of the grantor and reserving certain water rights pertaining to the land granted. When Lauck conveyed this tract of land to Huffman, he remained the owner of the land on which the spring is located.

The pertinent part of this deed is as follows:

"The said grantee is to enjoy fully the water right for the mill and saw mill upon said hereinbefore described (*land*) as granted to him, but is to use the same in such manner as not in anyway to injure or damage the land or other property retained by the grantor. In order to more perfect enjoyment of said water right, said grantee is to have the privilege of repairing the race leading through the lands of the grantor but is not to change the location of the same; said grantee is also to have the right to cut a race from Dry Run to said race on the water flowing into the same through the land of the said grantor five feet wide and five feet deep but is to construct the embankments of the same so as to prevent overflow at anytime, and to secure the aperture

through which the water is to flow from said run into said race so that at no time shall the water passing through the same exceed two feet in depth and five in width. The said grantor reserves to himself in this sale the right of the ordinary use of the water of the Spring which flows into said mill race—Also the right to so much of the water of said spring as will flow through a tube two and a half inches in diameter. Said grantor further reserves a road of twelve feet in width through the lands sold to said grantee to the grantor's land lying west of the land herein conveyed * * *."

Beginning with this conveyance, the succeeding chain of title is thus shown: By deed bearing date the 23rd day of April, 1866, David Huffman and wife reconveyed to Lauck a tract of six acres, three roods and twenty-one poles being a part of the one hundred and thirty-four acres. By deed bearing date 1st day of October, 1866, Huffman and wife reconveyed to Lauck a tract of land containing 108 acres, being a part of the one hundred and thirty-four acres heretofore conveyed by Lauck. In the deed from Huffman to Lauck is this reservation: "But the said David Huffman reserves to himself all the water privileges and the means for using and enjoying the same which were conveyed to him by the said William Edwin Lauck in the deed aforesaid." Then, by deed dated November 25, 1867, Huffman reconveys to Lauck a one undivided half of 12 acres and 30 poles, being a part of the 134 acre tract "with a merchant mill, saw mill and other improvements, * * * together with one-half of all the water privileges conveyed to the said David Huffman by the said Wm. E. Lauck by the deed aforesaid."

Under a contract dated November 30, 1868, Lauck acquired the residue of the mill property from Huffman. By deed bearing date June 4, 1869, Lauck conveyed to James H. Judd, "a certain lot of land with merchant mill, saw mill and other improvements thereon, lying at Spring Farm in the said county of Page, containing 12 acres and 30 poles, and is the same property conveyed to the said Wm. E. Lauck by David Huffman and wife by two deeds of record

in the Clerk's Office of the County Court of said county, together with all the water and other privileges, and subject to all the reservations embraced and described in a deed from the said Wm. E. Lauck and wife to the said David Huffman, bearing date on the 28th day of February, 1866." This mill property then by *mesne* conveyances was derived by W. L. Brown and by him devised to Ida L. Brown, his wife. By deed bearing date the 9th day of November, 1937, Ida L. Brown conveyed six and one-half acres upon which is located the mill, etc., to the appellee, together with "any and all water rights in and to what is locally and familiarly known as Spring Farm, now owned by Martin Hite's heirs, and which for many years past has been used by the owners of the aforesaid Brown Mill property, the water rights above referred to are fully described and set out, together with any and all reservations and restrictions as to the use thereof, in that certain deed executed by William E. Lauck and wife to David Huffman, bearing date on the 28th day of February, 1866, and duly of record in the said Clerk's Office in Deed Book M, at page 325, to which reference is hereby especially made, as well as to the other deeds hereinbefore mentioned."

While not necessary to be shown as a link in the chain of title, a conveyance from Lauck to David J. Patterson, after the reconveyance of Huffman to Lauck, is indicative of Lauck's status relative to the water rights conveyed, as the conveyance is "subject to the water and mill privileges heretofore granted to David Huffman." After a reconveyance of this land by Patterson to Lauck, by deed bearing date the 14th day of November, 1868, Lauck and wife, by deed bearing date the 10th day of November, 1869, conveyed to Martin Hite "a certain tract or parcel of land lying and being in the said county of Page, being a portion of the farm called the Spring Farm, and is all that portion of the same which was conveyed to the said W. Edwin Lauck by R. M. Patterson, attorney in fact for David J. Patterson by deed bearing date on the 19th day of November, 1868, and of record in the Clerk's Office of said county in Book N, at

page 255, containing two hundred and seventy-five acres, more or less, together with all the privileges of water from the Spring on the said farm reserved by the said Wm. Edwin Lauck in his deed to James H. Judd recently made and also of record in the said office."

At the date of his death, Martin Hite was seized and possessed of 218¾ acres of the land acquired from Lauck. Appellants Mary E. Hite and Joseph M. Hite derived title by inheritance, and appellant Joseph W. Comer derived title by conveyance from J. W. Comer, the grantee in a deed from Barbara and Mary Hite.

■ Since the appellants and appellee claim under a common source of title, it follows that whatever interest appellee may have in Hite's Spring is governed by the provisions of the deed from Lauck to Huffman and later to Judd. The same is necessarily true of the rights of appellants. An analysis of the Lauck-Huffman deed demonstrates that to Huffman these rights were granted:

(1) "To enjoy fully the water right for the mill and saw mill;"

(2) "In order to the more perfect enjoyment of said water right to have the privilege of repairing the race leading through the lands of the grantor;"

(3) "Right to cut race from Dry Run, etc."

The rights reserved by Lauck in the deed were:

(1) "Grantor reserves to himself in this sale the right of the ordinary use of the water of the spring which flows into the said mill race;"

(2) "Also the right to so much of the water of said spring as will flow through a tube two and one-half inches in diameter;"

(3) "Roadway."

■ Stripped of all verbiage, it is the contention of appellants that the deed from Lauck to Huffman only conveyed an easement in the waters flowing in the channel through the lands of appellants. The contention of appellee is that the deed from Lauck to Huffman conveyed an actual property right in and to Hite's Spring and the waters flow-

ing therefrom. In construing the Lauck-Huffman deed, the court will be guided to a great extent by the familiar rule of construction that "a deed is construed most strongly against the grantor and in favor of the grantee. This rule has been called one of the most just and sound principles of the law because the grantor selects his own language." *South & W. R. Co.* v. *Mann,* 108 Va. 557, 62 S. E. 354 and 8 R. C. L., sec. 104.

In the petition for a writ of error, it is said, "The right granted of water flowage from the springs to the mills does not operate as a sale of a chattel, but only as an easement."

■ While the sale of water or of a water right may not be denominated the sale of a chattel, it is a well settled doctrine that there may be a conveyance of water or water rights separate and apart from the land thereunder, and that such a conveyance is a conveyance of a property right.

In Farnham, Waters and Water Rights, page 2190, it is said:

"As seen in the preceding section the bed upon which the water rests may be separated from the land. The question then arises as to what is the effect of this separation upon the ordinary rights of the riparian owner, and to what extent the ordinary riparian rights may be destroyed thereby. And, first, it may be answered that all rights which depend primarily upon ownership of the soil upon which the water rests may be separated from the ownership of the shore.

"The general right to use and occupy the water may be severed from the upland. As stated in *Mansfield* v. *Balliett,* 65 Ohio St. 451, 63 N. E. 86, 58 L. R. A. 628, riparian rights are property that may be the subject of bargain and sale, either with, or separate from, the land; they constitute a part of the owner's estate in the land, and enter materially into the actual value, any impairment of which by the public calls for a just indemnity *pro tanto.* But a distinction is to be made between the different uses to which the water is to be put. The right to use water from the stream for domestic and irrigation purposes is strictly a riparian right, and cannot be utilized upon the bed of the stream itself, and

therefore it cannot be separated from the uplands because of the physical impossibility of such a course. There is no doubt, however, that the owner of the riparian land might contract not to utilize such right for the benefit of the owner of the stream, and such a contract would have practically the same effect as a separation of the right from the land."

This same principle is stated in 27 R. C. L., p. 1235.

■ In Minor on Real Property (2d Ed.), Ribble, it is said: "The well settled general rule on this point is that each riparian proprietor has *ex jure naturae* an equal right to the reasonable use of the water running in a natural course through or by his land for every useful purpose to which it can be applied, whether domestic, agricultural or manufacturing, providing it continues to run, after such use, as it is wont to do, without material diminution or alteration and without pollution; but he cannot diminish its quantity materially or exhaust it (except perhaps for domestic purposes and in the watering of cattle) to the prejudice of the lower proprietors, unless he has acquired a right to do so by grant, prescription or license."

In *Ficklen* v. *Fredericksburg Power Co.*, 133 Va. 571, 112 S. E. 775, it was held that water may be separated from the land underneath and conveyed separate and apart therefrom. See also, *Gordonsville* v. *Zinn*, 129 Va. 542, 106 S. E. 508, 14 A. L. R. 318; *Virginia Hot Springs* v. *Hoover*, 143 Va. 460, 130 S. E. 408, and authorities cited.

In a well considered opinion, the trial court points out the respective rights of Lauck, Huffman and Judd as follows:

"When Lauck conveyed the mill tract to Huffman and later to Judd, had the deed been silent concerning water rights, the grantees as lower riparian owners would have become by operation of law, entitled to have the natural flow of the water of the spring to their lands, undiminished in volume except as affected by reasonable and necessary use by the upper owner in the exercise of his riparian rights; and Lauck as upper riparian owner would have been entitled to the reasonable use of the water in the spring and as it flowed through his lands, for ordinary domestic and agricultural

purposes and for the extraordinary, or artificial, purpose of developing power from the flow.

■ " 'These respective riparian rights of user are in no sense easements, but are qualified property rights incident to the ownership of the soil through or by which the waters of a stream flow.' 27 R. C. L., pp. 1079, &c., ss 23, 24, &c. *Gordonsville* v. *Zinn,* 129 Va. 542 [106 S. E. 508, 14 A. L. R. 318].

"If no rights in the water of the spring other than those arising from riparian ownership, were intended to pass by grant to the owner of the mill tract, then the provisions of the deed relative to the enjoyment of the water right are without effect. Even the provision against use in such manner as not to cause damage to other lands of grantor, would have no force or meaning.

"The reservation for ordinary use would be surplusage, but the reservation to extract from the spring would have some force."

In construing the deed from Lauck to Huffman, this is said:

"Taking up and interpreting the several sentences, phrases and words in the paragraph relating to water rights and reservations, found in this deed, and giving effect to the whole, I have reached the conclusion hereinafter set out.

"In the first place, it seems clear that the grantor recognized two things:

"(1) That practically all the water of the spring must of necessity be used in an efficient operation of the mills. This is made certain by the following clause: 'said grantor is also to have the right to cut a race from Dry Run . . . '.

"(2) That whatever rights not simply riparian, that were to be appurtenant to the mill property, must be fixed by the deed.

"The water right actually intended to be created, fixed and granted is to be measured by the language used taken in conjunction with objects sought to be obtained.

"The grantor says: 'The grantee is to enjoy fully the water right', with no limitation other than such use shall

in no way damage or injure the lands retained by the grantor; and further says: 'In order to the more perfect enjoyment of said water right' the grantee is to have privilege of repairing race, etc., and to have the right to cut a race from Dry Run; and then reserves to himself 'in this sale' the right to ordinary use of the water of the spring which flows into said mill race and the right to so much of the water of said spring as will flow through a two and one-half inch tube.

"When this language is considered along with the facts surrounding and in the light of the purpose intended to be obtained, viz., to secure to the grantee an amount of water sufficient to properly operate his mills located on the then 12 acre tract, the conclusion must be as follows:

"(1) That the grantees of the mill tract—first Huffman and then Judd—by virtue of the provisions of the Huffman deed, took as an appurtenance to said tract a property right in and to the spring and all the water flowing therefrom, subject only to (a) the right to withdraw and use and not return to the stream or spring, so much water as will flow through a two and one-half inch tube, and (b) the reserved right of ordinary use of the water for domestic purposes only as it flows through the lands which the plat now indicates belong to Mary E. Hite and C. B. Hite."

In addition to the reasons stated by the trial court, the facts and circumstances surrounding the various transactions connected with the several conveyances and the partition of the Martin Hite estate seem to us to call for an application of the doctrine of practical construction. It is manifest that if Lauck only intended to convey an easement in Hite's Spring, there was no reason for the reservations contained in the deed. It is also significant that in the conveyance to Martin Hite, Lauck conveyed the 274 acres "Together with all the privileges of water from the spring on the said farm reserved by the said William Edwin Lauck in his deed to James H. Judd * * * ." It is thus seen that Martin Hite and those claiming under him only took such an interest as was reserved in the Lauck-Judd deed. This

conclusion was recognized in the partition decree of the Martin Hite estate, and also in the conveyances made by three of the heirs of Martin Hite. In conveying their undivided interest in the estate of Martin Hite, the following language appears in the several deeds: "Together with all the privileges of water from the spring on the said farm reserved by the said W. Edwin Lauck in his deed to James H. Judd."

Then, too, it is to be noted that in the reconveyance by Huffman to Lauck, *supra*, Huffman reserved to himself all the property and water rights theretofore conveyed to him by Lauck. Then, again, in the deed from Lauck to Patterson, the grant is "subject to the water and mill privileges heretofore granted to David Huffman." It therefore follows that the contention of appellants, that the conveyance from Lauck to Huffman created only an easement, is without merit, for the patent reason that, if true, Huffman, and later Judd, took less under the deeds than they would have taken by operation of law as riparian owners.

The conclusion of the trial court, which we adopt as a correct construction of the deed from Lauck to Huffman, is thus stated:

"Therefore, my conclusion is that the Town of Luray under its deed from Ida L. Brown is entitled to all the rights and privileges granted by W. E. Lauck to James H. Judd which rights and privileges are set out in the deed from Lauck to Huffman, subject to the rights reserved to the grantor in the Huffman deed; and specifically as to the water in and flowing from the spring that Judd acquired under his deed, and the Town of Luray now owns, a right of property to all the water in the spring except so much thereof as may be necessary for the enjoyment by Lauck and his assigns of the reservations made by Lauck in his deed to Huffman, to-wit: (1) The right to withdraw from the spring so much of the water therein as will flow through a pipe two and one-half inches in diameter; and (2) the right to use of so much of the water flowing from the spring as may be necessary to meet the ordinary (domestic) needs

of the owners of the lands through which it passes. Both the rights and privileges granted and those reserved are considered by me as appurtenant to and running as covenants with the lands granted and retained respectively."

The decree will be affirmed.

*Affirmed.*