March 8, 1965.

Record No. 5865.

Present, Eggleston, C. J., and Buchanan, Snead, l'Anson and Carrico, JJ.

*William L. Parker* (*William L. Parker, Jr.,* on brief), for the appellant.

*William B. Spong, Jr.* (*Michael A. Kork, Jr., City Attorney; Cooper, Spong & Davis,* on brief), for the appellee.

Cᴀʀʀɪᴄᴏ, J., delivered the opinion of the court.

This controversy arose out of the following situation:

The Seaboard Air Line Railway Company, by deed dated March 20, 1909, acquired from The Atlantic Coast Terminal Company, Incorporated, certain parcels of land in the city of Portsmouth,

together with all riparian rights appertaining thereto. The land so acquired bordered on Crawford's Bay, a part of Elizabeth River, a navigable tidal estuary of the Chesapeake Bay.

By deed dated December 14, 1933, Seaboard conveyed to H. B. Wilkins a portion of the land acquired by it from the Terminal Company. The Wilkins parcel was described as being 40 feet wide and 117 feet long and having as its northern boundary the line of mean low-water of Crawford's Bay. The deed contained the following crucial reservation and exception:

"The parties of the first part hereby expressly reserve and except from this conveyance all the riparian rights appertaining or in anywise belonging to the said property . . . ."

Elizabeth P. Thurston, the complainant, has become the owner of the parcel of land conveyed by Seaboard to Wilkins. The city of Portsmouth, the defendant, has become the owner of the riparian rights reserved and excepted in the deed from Seaboard to Wilkins.

The complainant filed a bill of complaint against the defendant in which she alleged that the reservation and exception in the Seaboard-Wilkins deed was ineffective because riparian rights "can only exist as appurtenant to property above the line of mean low-water"; that Seaboard had conveyed all of the upland to Wilkins and had retained no land to which the riparian rights could attach; that she, therefore, as successor to Wilkins, owned the riparian rights; that the defendant was depositing fill on the bed of Elizabeth River for the construction of a roadway between her property and the river, in violation of her riparian rights, and that as a result she would sustain irreparable damage. She prayed for an interpretation of the Seaboard-Wilkins deed and an injunction restraining the defendant from constructing the roadway.

The defendant filed a demurrer to the complainant's bill, alleging that the same was not sufficient in law. The demurrer was sustained by the chancellor and a final decree was entered dismissing the bill. The complainant was granted an appeal.

The reservation and exception in the Seaboard-Wilkins deed is the focal point of the issue in this cause. If the reservation and exception was effective to divest the property of the complainant of the riparian rights once appurtenant thereto, then the complainant has no standing to maintain this suit. If she is to prevail, she must rely on the strength of her own title and not upon any alleged weaknesses in that of the city.

The sole question to be determined, therefore, is whether riparian rights, of the character here involved, may be severed and held separately from land to which they were originally appurtenant.

The right of a riparian owner to the benefits resulting from his ownership of land on navigable water is recognized both by statute and by case law.

At common law, the title of such an owner extended only to high-water mark. But an Act of Assembly adopted in 1679 (2 Hen. Stat. 456) established that "every man's right, by virtue of his patent, extends into the rivers or creeks so far as low watermark."

The present day statutes continue to recognize such right and to define the extent of its exercise. Code, § 62-2, the descendant of the act of 1679, provides that, subject to the provisions of § 62-1, "the limits or bounds of the several tracts of land lying on . . . bays, rivers, creeks and shores, and the rights and privileges of the owners of such lands, shall extend to low watermark, but no farther, unless where a creek or river, or some part thereof, is comprised within the limits of a lawful survey."

Code, § 62-1 provides that the ungranted beds of bays, rivers, creeks and the shores of the sea shall be the property of the Commonwealth but "may be used as a common by all the people of the State for the purpose of fishing and fowling, and of taking and catching oysters and other shellfish."

From the early case of *French* v. *Bankhead*, 11 Gratt. (52 Va.) 136, this court has respected and given full effect to these legislative pronouncements of the rights of riparian owners. In the *French* case, it was said that such owners "shall have, possess and enjoy exclusive rights and privileges to and along the shores" of the waters bordering their land "down to ordinary low water mark. By the common law, the title of the proprietor extends to the ordinary high water mark. The shore, or that space alternately covered and left dry by the rise and fall of the tide, being the space between high and low water marks, was in the king for the use of the public. The law of Virginia, so far at least as relates to the soil, has, as appears by the act [of 1679], been altered; and the limits or boundaries of the land extend over and included the shore, by operation of law." 52 Va., at pp. 159-160.

In *Taylor* v. *Commonwealth*, 102 Va. 759, 47 S. E. 875, the rights of a riparian owner were delineated as follows:

"First. The right to be and remain a riparian proprietor and to

enjoy the natural advantages thereby conferred upon the land by its adjacency to the water.

"Second. The right of access to the water, including a right of way to and from the navigable part.

"Third. The right to build a pier or wharf out to navigable water, subject to any regulations of the State.

"Fourth. The right to accretions or alluvium.

"Fifth. The right to make a reasonable use of the water as it flows past or laves the land." 102 Va., at p. 773.

The gist of the complainant's argument is that, by nature, the rights just described "are easements appurtenant to lands, of value only to the owner of the land" which cannot be converted into easements in gross by any attempted separation of the ownership of the easements and their dominant tenements. The complainant asserts that "a reservation of such rights in a conveyance . . . would be void, as repugnant to the grant."

But is this the true nature of riparian rights? Are they mere easements and subject to the same rules as to severability as are such easements? The answers to these questions have already been provided by our earlier decisions.

In *Peek v. Hampton*, 115 Va. 855, 859, 80 S. E. 593, it was said that a riparian right is "not a mere easement to pass over the water or a privilege to use the surface, but [is] property in the soil under the water."

In *Hite v. Town of Luray*, 175 Va. 218, 226, 8 S. E. 2d 369, it was said of riparian rights that they "are in no sense easements, but are qualified property rights incident to the ownership of the soil through or by which the waters of a stream flow."

A "riparian right is property, and is valuable." *Taylor v. Commonwealth, supra*, 102 Va., at p. 771. Such a right is a proper subject for protection by injunction. *Carpenter v. Gold*, 88 Va. 551, 553, 14 S. E. 329. Injury thereto entitles the owner to damages. *Peek v. Hampton, supra*, 115 Va., at p. 859. And if such a right is sought for public use, it may be taken by eminent domain. *Town of Purcellville v. Potts*, 179 Va. 514, 522, 523, 19 S. E. 2d 700.

It has long been assumed, and specifically recognized, in Virginia, that riparian rights may be severed from the land to which they were once appurtenant and dealt with separate and apart therefrom.

In *Waverly, &c. Co. v. White*, 97 Va. 176, 33 S. E. 534, the very riparian rights here in question were involved in an earlier dispute. An apportionment of such rights among the owners of land bordering

Crawford's Bay was ordered. The case recognized the right of each abutting owner to the soil between ordinary high- and low-water mark. Of special interest to the question at hand is the following statement in the opinion:

" . . . We do not, of course, mean to say that the operation of the grant may not be so limited to 'high-water mark' as to exclude riparian rights as incident to it, but . . . the intention so to do must be clear and manifest upon the face of the deed . . . ." 97 Va., at p. 180.

In the case of *Ficklen* v. *Fredericksb'g P. Co.*, 133 Va. 571, 112 S. E. 775, it was held that a riparian right "could be separated from the land and that it was susceptible of partition in kind between . . . the coproprietors thereof." 133 Va., at pp. 595, 596.

In *Hite* v. *Town of Luray, supra,* the principle of severability was even more clearly enunciated. There the ruling was in favor of a non-riparian holder of water rights in the land of another. The court said that "it is a well settled doctrine that there may be a conveyance of water or water rights separate and apart from the land thereunder, and that such a conveyance is a conveyance of a property right." 175 Va., at p. 224.

The complainant contends that we should afford no weight to the *Ficklen* and *Hite* decisions because they deal with the right to water in inland streams rather than with tidal waters, as are involved here. For answer to this contention, we adopt the compelling logic of the able opinion written by the chancellor where he held that "there is no difference in principle . . . between the case where the volume of flow of a small stream is important in the one instance, and the right to construct a wharf to accommodate ocean-going vessels is dominant in the other. Both are rights of importance to the riparian owner according to his own peculiar situation. If he can alienate the right in the one case, there is no reason why he cannot do it in the other."

Our concept of the severability of riparian rights is shared by most all of our sister states where the question has arisen.

In 56 Am. Jur., Waters, § 253, p. 710, it is stated:

"As a general proposition, subject to statutory or conventional restrictions, all rights to water, riparian or otherwise, may be severed from the lands to which they are attached, and separately conveyed . . . ."

Cases from Colorado, Idaho, Massachusetts, Minnesota, New Hampshire, Texas and Wyoming, along with our case of *Hite* v. *Town*

*of Luray, supra,* are cited in support of this statement. No contrary decision is indicated.

In 56 Am. Jur., Waters, § 288, p. 740, this statement is found:

"It is generally held that riparian rights may be separated from the ownership of the land to which they are appurtenant, either by a grant of such rights to another, or by a reservation thereof in the conveyance of the land . . . ."

Cases from Minnesota, New Hampshire, Oregon and, again, our *Hite* case, are cited in support of this proposition. The case of *Richter* v. *Granite Mfg. Co.,* 107 Tex. 58, 174 S. W. 284, is cited for the contrary position. The *Richter* decision, however, was not followed in the later Texas cases of *Gibson* v. *Carroll,* Tex. Civ. App., 180 S. W. 630, and *City of Corpus Christi* v. *McLaughlin,* Tex. Civ. App., 147 S. W. 2d 576. The latter two cases established the present rule in Texas to be that riparian rights "are subject to conveyance; that such rights may be reserved by the grantor."

Moreover, the Texas court in the *Richter* case, decided in 1915, relied upon and quoted with approval from the case of *Land Co.* v. *Emerson,* 38 Minn. 406, 38 N. W. 200. However, the *Emerson* decision had been expressly overruled in 1890 by the Supreme Court of Minnesota in *Hanford* v. *St. Paul & D. R. Co.,* 43 Minn. 104, 44 N. W. 1144. The *Hanford* case established the rule, since followed in Minnesota, that the nature and qualities of a riparian right "are not in themselves such as to forbid its alienation, its separation from the riparian estate, and its enjoyment by others than the occupants of the upland."

The only presently dissenting voice to which our attention has been directed or to which our research has led is *Shepard's Point Land Co.* v. *Atlantic Hotel,* 132 N. C. 517, 44 S. E. 39. There the land company held grants from the state, pursuant to an act of 1854 which permitted such grants for certain purposes, to Squares Nos. 1 and 83 of Morehead City. Square No. 1 was upland bordering on tidal waters. Square No. 83 was underwater and was separated from Square No. 1 by an unopened street, which was submerged by high water.

Square No. 1 was conveyed to Atlantic Hotel, which built piers from its land out into the water, over the street and Square No. 83. The court upheld the right of the hotel to maintain the piers against the land company's assertion that it had the superior right to the underwater land by reason of its grant from the state of Square

No. 83. Although the court stated that it had formerly held that "riparian rights . . . cannot be conveyed without a conveyance" of the upland, the decision turned principally upon an interpretation of the act of 1854, upon which the land company's right to the underwater soil depended.

The North Carolina court, in upholding the hotel's riparian rights, merely followed the general rule that, ordinarily, a conveyance of riparian land carries with it, as appurtenant thereto, the riparian rights. It should be noted that the deed from the land company to the hotel manifested no intention that the riparian rights were to be withheld from Square No. 1. The decision cannot, therefore, be taken as authority for the proposition that riparian rights cannot voluntarily be reserved and excepted from a conveyance of the upland.

Finally, the complainant contends that an affirmance of the decree of the chancellor would overrule prior decisions of this court; would nullify the power of the state to regulate riparian rights and to exercise dominion over the public waters, and would invade the complainant's constitutional right to just compensation for damage to her property.

As has been seen, a decision upholding the severability of riparian rights would not be contrary to, but fully in accord with, our prior decisions. Such action would be consonant with the mutually reciprocal rights and obligations of riparian owners, measured against the right of the state to use and improve public waters so as to subserve best the common rights of all. Such a result could not disturb the complainant in the enjoyment of her upland property if the reservation and exception in the Seaboard-Wilkins deed was effective because, under such circumstances, she would have acquired no riparian rights in the first place.

The language of the Seaboard-Wilkins deed fully met the test of the rule set forth in *Waverly, &c. Co.* v. *White, supra.* There was, upon the face of the deed, a clear and manifest intention to exclude riparian rights from the conveyance. We give effect to that intention by reacknowledging our prior recognition of the severability of riparian rights and by affirming the decree of the chancellor.

*Affirmed.*