# Richmond

INTERSTATE MOTELS, INC. v. CLYDE E. BIERS, ET AL.

January 15, 1973.

Record No. 7985.

Present, All the Justices.

*Donald C. Grey (James A. Murphy, Jr.; Murphy, Grey & Kent, on brief), for appellant.*

*Joseph J. Lawler (Kellam, Pickrell & Lawler, on brief), for appellees.*

CARRICO, J., delivered the opinion of the court.

This dispute is between Interstate Motels, Inc., the owner of Lot 17 in the subdivision of Robinhood Forest, city of Virginia Beach, and Clyde E. and Phyllis K. Biers, the owners of Lot 16 in the same subdivision. The question for decision is whether the Biers have riparian and drainage rights in a cove or arm of the Lynnhaven River, which cove or arm crosses Lot 17, Interstate's lot, and extends into Lot 16, the Biers' lot. The controversy arose when Interstate notified the Biers that it intended to construct a causeway or dam across the cove.

The trial court, upon a bill of complaint filed by the Biers, permanently enjoined Interstate from interfering with the Biers' rights of access and drainage through the cove. Interstate was also enjoined from constructing a causeway or dam across the cove. We granted Interstate an appeal from the final decree awarding the injunction.

The two lots in question are parts of land formerly owned by Harold James. On October 19, 1962, he recorded a plat subdividing the land into Robinhood Forest. The westerly boundary of the subdivision is the Eastern Branch of the Lynnhaven River, a tidal stream. A number of coves or arms of the river extend into the subdivision, and they are shown on the plat by meandering solid lines marked "shore line," the sides of the coves generally straddling dividing lines between lots. Before recording the plat, James had the coves dredged and "opened them up a little deeper" to make "the lots more saleable."

James conveyed Lot 16 to the Biers by deed recorded October 6, 1967, and they occupy a dwelling thereon. James conveyed Lot 17 to Interstate's predecessor in title by deed recorded March 22, 1968. Both deeds conveyed by lot number and reference to the plat. Neither deed contained any recitals helpful to resolution of the question before us.

Lot 16, the Biers' lot, fronts on the west side of Trant Road, now Spigel Drive. The main body of Lot 17, Interstate's lot, lies behind and to the west of Lot 16. Access to Spigel Drive from Lot 17 is provided over a 15-foot strip, a part of the lot, running along the southerly line of Lot 16.

The subdivision plat shows that the cove in question runs inland in an easterly direction along the southerly line of Lot 17 and then turns to the north and crosses the lot at a point where the narrow portion, the 15-foot strip, merges into the main body of the lot. The plat also shows that the cove extends into Lot 16.

The plat further shows dotted lines around the coves indicating areas, in most instances 50 feet wide, reserved for "dredging and drainage." In addition, the plat dedicates to the public a 5-foot easement along all lot lines for "utilities & drainage." A note provides that the "utilities & drainage" easements shall in no way restrict the right of ingress and egress to and from certain listed lots, including Lot 17, or "prohibit drive ways to be constructed through the narrow portion of said sites."

A portion of the plat is here reproduced for better understanding:

BROKEN LINES INDICATE AREA RESERVED FOR
DREDGING AND DRAINAGE

The evidence shows that the cove in question extends 70 feet into Lot 16, is 25 feet wide at the line dividing Lots 16 and 17, and is 10 feet wide at its point of termination. The tide ebbs and flows in the cove onto Lot 16. The depth of the water on the lot at high tide is sufficient to float a small boat, and at low tide, the water measures several inches. At high tide, the cove is filled, and at ordinary low tide, the water extends 10 to 15 feet onto the lot.

The natural drainage for Lot 16, as well as for Lot 18 and a section of Spigel Drive, is into the portion of the cove on Lot 16. The evidence shows that a substantial quantity of surface water drains across Lot 16 and into the cove during periods of rainfall.

Since their purchase of Lot 16, the Biers have used the cove for access to the Lynnhaven River. They have done no dredging in the cove, and they have not changed the topography of their lot.

At the outset of our discussion, we lay to rest a contention raised by Interstate in its brief. This contention is that the trial court improperly considered, and so we should not consider, evidence relating to the high- and low-water marks in the cove in question. The objection comes too late. No assignment of error touches the point, and the evidence which we have recited was all admitted without objection. In fact, Interstate itself introduced some of it. So we reject the contention and will consider all the evidence.

We also put aside any question whether the public has any rights in the cove in question. Interstate's argument, hereafter outlined, would make it appear that the possible rights of the public are at issue in the case, but they are not. All we have to decide is a contest between two private parties over the meaning of certain lines and notations placed on a plat by a subdivider of land. And the contest is to be determined in light of evidence showing the physical characteristics of the land at the time of subdivision, which had not changed at time of trial.

Interstate's position is that James, the original developer of the subdivision, by his plat severed the riparian rights in the cove in question with respect to Lot 16, the Biers' lot. Therefore, Interstate concludes, the Biers did not acquire any riparian rights and have no ground to complain of the construction on Lot 17 of a causeway across the cove.

Interstate does not directly answer the Biers' claim of right to use the cove for drainage, contenting itself to lump the riparian rights and drainage questions as one. So, in like manner, the disposition we

will presently make of the riparian rights question will also dispose of the drainage issue.

Interstate's argument, as we understand it, is this: The question of ownership of riparian rights must be determined in this case with respect to the low-water mark of the tidal waters involved. James, before he subdivided, owned land fronting on the Lynnhaven River, a tidal stream. Under Code § 62.1-2, he owned out to the low-water mark of that stream. Under Code § 62.1-1, the Commonwealth owns the beds of the bays, rivers, and creeks, *i.e.,* the land lying under low water, for use as a common by the public. James sub-divided his land, showing the Lynnhaven River as his water boundary and including within the perimeter of the subdivision the beds of the coves and arms of the river.

The validity of James' plat, the argument continues, was not questioned in the court below, and it cannot be presumed that he platted any land belonging to the Commonwealth. Therefore, it must be taken as conclusive that the determinative low-water mark lies outside the perimeter of the subdivision and that low water does not touch any of the land within the perimeter so as to give the owners of lots public rights in the coves and arms. Thus, James owned in fee simple the beds of the coves and arms and could plat his land in any manner he desired, dedicating, granting, or withholding riparian rights as he wished.

So far as Lot 16, the Biers' lot, is concerned, the argument goes on, James displayed by his plat an intention to sever from the lot the riparian rights in the cove in question. Such was James' intention because (1) the southerly line of Lot 16, dividing it from Lot 17, was defined by a fixed course and distance, indicating that the owner of Lot 16 was to have no rights beyond that line, (2) Lot 16 was given access to the river through another cove on its northerly side by the designation of an area touching the lot and marked "reserved for dredging and drainage," whereas the area reserved in the cove in question ends short of the southerly line of the lot, so obviously "it was not the intention of the subdivider to give Lot 16 two . . . means of access to the river," and (3) the legend on the plat, noting that the 5-foot easements dedicated to the public for "utilities & drainage" should in no way prohibit the construction of driveways through the narrow portion of the listed lots, including Lot 17, preserved to the owner of Lot 17 the right to construct a causeway across the cove.

Interstate's argument may be complicated, but the answer to

it is simple. Two overriding sets of circumstances answer every facet of the argument. First, James' plat showed the cove in question extending across the narrow portion of Lot 17 and beyond the southerly line of and into Lot 16. Second, the plat, by its designation of "shore line," and other evidence established not only a high-water mark on the lot, but also established what Interstate says is so essential, a low-water mark on the lot.

If James intended to sever the riparian rights appurtenant to Lot 16, it was incumbent upon him to make his intention clear and manifest. *Thurston* v. *Portsmouth*, 205 Va. 909, 913, 140 S. E. 2d 678, 681 (1965). This he did not do. To the contrary, by showing the cove extending into Lot 16, onto which the tide ebbed and flowed, he displayed the intention that the riparian rights appurtenant to the lot were to be enjoyed by its owner.

The trial court did not err in permanently enjoining Interstate in the manner set out in the final decree. Accordingly, the decree will be affirmed.

*Affirmed.*