## CIRCUIT COURT OF ALLEGHANY COUNTY

William T. Wilson
and Langhorne C. Wilson

v.

Teddy J. Dressler, Sr.,
and Juanita R. Dressler

July 13, 2000

BY JUDGE HUMES J. FRANKLIN, JR.

The issues in the above-style case now before the Court are as follows:

(a) Whether the water in question is a proper subject for riparian rights.

(b) Whether riparian rights extend to all areas of flow on the owner's property.

(c) Whether the use of the water in question is reasonable.

(d) Whether the use in question is a proper subject for the issuance of a preliminary injunction.

### General Rules

(a) Water which consistently flows in a certain direction within a regular channel is a proper subject for riparian rights. See *Cubbins v Mississippi River Commission*, 241 U.S. 351, 36 S. Ct. 671 (1915); *Chesapeake & Ohio Ry. Co. v. Meriwether*, 120 Va. 55 (1916).

(b) The rights of a riparian owner extend to all owned riparian lands and are not limited to portions actually used. See generally *Thurston v. City of Portsmouth*, 205 Va. 909, 140 S.E.2d 678 (1965) (no mention of a limitation).

(c) Each riparian owner has an equal right to the "reasonable use of the water running in a natural course through or by his land for every useful purpose . . . providing it continues to run . . . without material diminution . . .

(except perhaps for domestic purposes and in the watering of cattle)." *Hite v. Town of Luray*, 175 Va. 218, 8 S.E.2d 369 (1940).

(d) A riparian right constitutes valuable[1] and severable[2] property and is a "proper subject for protection by injunction." *Carpenter v. Gold*, 88 Va. 551, 553, 14 S.E. 329 (1892). A preliminary injunction is properly granted where the defendants' actions constitute irreparable harm to the plaintiff and the defendant would not suffer harm as a result of the injunction. See Michie's Jurisprudence, *Injunctions*, § 88.

### Facts

Dressler owns a parcel of land which abuts against the property of Wilson. A spring creek which originates on Wilson's property flows onto Dressler's property where a containment pond was built for watering cattle. The water then naturally flows back onto Wilson's property where it eventually sinks into the ground. Because of Dressler's need to water cattle on another portion of his property, he ran a pipe from the containment pond to a basin where the water was needed. This diversion resulted in a substantial drop in the level of the containment pond and a cessation of water flow back onto Wilson's property. The focus of Wilson's Bill for Injunction is the water that no longer flows back onto his property due to the diversion. Wilson urges the court to enjoin Dressler from his continued diversion of water so that the flow of water will return to his riparian land.

### Analysis

#### A. *Whether the Water in Question is a Proper Subject for Riparian Rights*

It is presumed that water is supplied by percolation unless it can be established that it is supplied by a definite flowing stream. See *Miller v. Black Rock Springs Improvement Co.*, 99 Va. 747, 40 S.E.27 (1901). Generally, water that percolates through the ground in no known or ascertainable channel belongs to the realty on which it is found and is not a proper subject for riparian rights. See *id*. Likewise, no riparian rights attach to channels which occasionally contain water during times of heavy rain or snow melt. See Michie's Jurisprudence, *Waters and Watercourses*, § 3. Riparian rights attach

---

[1] See *Taylor v. Commonwealth*, 102 Va. 759, 47 S.E. 875 (1904).

[2] See *Thurston*, 205 Va. 909, 140 S.E.2d 678.

to surface waters only when it is established that they are streams. See *id.*; see also *Cubbins*, 241 U.S. 351, 36 S. Ct. 671; *Meriwether*, 120 Va. 55 (1916).

A stream is a body of water which flows in a certain direction, runs through a regular channel, and is contained by banks or sides. See *Hot Springs Lumber & Mfg. Co. v. Revercomb*, 106 Va. 176, 55 S.E. 580 (1906). The flow need not be continuous throughout the year, as may be the case during the dry season. See *Miller*, 99 Va. at 757. In the case at hand, the photographs clearly display the existence of a well-worn channel with water flowing from the pond down onto Wilson's property. Though there do not appear to be high banks enclosing the stream, there is a well-defined line between the water channel and the surrounding land. These are not characteristics of water that percolates or oozes to and upon the surface of the land.

The water flows upon Wilson's land for eight to nine months out of the year[3] and only stops during dry periods. The flow in question therefore does not flow uninterrupted throughout the year. Such an extended flow of eight to nine months, however, cannot be the result of an occasional outburst of water at times of heavy rain or snow melt. See Michie's, *supra*, note 11. Therefore, the water in question qualifies as a stream and is subject to riparian rights.

B. *Whether Riparian Rights Extend to All Areas of Flow on the Owner's Property*

In general, the only limit upon the riparian rights, after such rights are determined to exist, is that the owner make a reasonable use of the water. Riparian rights are not mere easements. See *Peek v. City of Hampton*, 115 Va. 855, 859, 80 S.E. 593 (1914). Riparian rights are "qualified property rights incident to the ownership of the soil through or by which the waters of a stream flow." See *Hite*, 175 Va. at 226. What is more, a riparian right constitutes valuable property. See *Taylor*, 102 Va. 759.

Dressler argues that because Wilson has the use of the flow prior to its entering Dressler's property, Wilson is not deprived of his riparian rights. Though Wilson is not totally deprived of the use of such water because its flow originates upon his property, the sole issue in this case is the flow that returns to Wilson's property. Also, use of water is only one right of a riparian land owner. Wilson also has the right to have the water flow upon his land. See *Davis v. Town of Harrisonburg*, 116 Va. 864, 83 S.E. 401 (1914).

---

[3] See the defendant's objections to the plaintiff's Bill for Injunction. "Both parties agree that it will cease flowing through natural occurrences soon and for the next 3 to 4 months." *Id.*

Despite the possibility of this being a case of first impression, it would be contrary to the general principles of riparian ownership to limit such rights merely because the stream in this case happens to have its flow temporarily cross the land of a neighbor. There appears to be no support for such a curtailment of riparian rights. Therefore, Wilson's riparian rights extend to all portions of his land that qualify as riparian.

## C. *Whether the Use of the Water in Question is Reasonable*

Generally, all riparian land owners on the same stream have an equal right to the use of the water. This right, however, is limited by the equal rights of other riparian owners and must not be inconsistent with them. Each owner of riparian land is entitled to the flow of water upon his property[4] and its use. See *Virginia Hot Springs Co. v. Hoover,* 143 Va. 460, 130 S.E. 408 (1925). To ensure that each riparian land owner shares equally in the flow and use of the water, each owner may use the water only to the extent that their use is reasonable. See *Hite,* 175 Va. at 226.

A reasonable use is any use of the water in its channel, whether agricultural, domestic, or industrial which does not cease or materially diminish, exhaust, or alter the water's flow "(except perhaps for domestic purposes and in the watering of cattle)." *Id.* at 225, quoting *Minor on Real Property* (2d ed.). In addition, a diversion of water beyond riparian land "is an extraordinary and not a reasonable use." *Purcellville v. Potts,* 179 Va. 514, 19 S.E.2d 700 (1942).

It is clear in this case that the flow of water onto Wilson's property completely ceased after Dressler's diversion. The exception for watering cattle upon which Dressler relies is coupled with a similar exception for domestic purposes. The connection of these uses clearly indicates that cessation of flow is reasonable when it is needed to sustain life and may reasonably be read to apply only to situations where the water in question is the sole source of water. Given the fact that Dressler's property contains several sources of water from which his cattle may drink, it appears that this exception does not apply. Therefore, Dressler's use is not reasonable.

---

[4] See *Kirk v. Hodge,* 123 Va. 519, 97 S.E. 116 (1918).

D. *Whether the Use in Question is a Proper Subject for a Preliminary Injunction*

Generally, the diversion of a natural watercourse, "though without actual damage to the lower riparian owner, [is] an infringement of a legal right and import[s] damage, and that damage a court of equity would prevent." *Id*. In the case of the *Town of Purcellville v. Potts*, the town erected dams upstream of Potts's land to divert water away from its natural course of flow into a reservoir. This diversion resulted in the cessation of water flow upon Potts's land, the water's natural course. Potts was granted injunctive relief because the diversion constituted an infringement of his property rights, and the dams were ordered removed. See *id*.

*Potts* appears to be a case on point. As in *Potts*, Dressler diverted water from its natural course for use in another area. The uses are somewhat similar as well. In *Potts*, the water was impounded for human consumption, while in the case at hand, the use is for watering livestock. Dressler objects to the issuance of a preliminary injunction because Wilson has use of the water upstream and is therefore harmed in no way. As stated earlier, the issue at hand is Wilson's rights with respect to the downstream portion of the watercourse, and riparian rights consist of more than mere use. Wilson has a valuable proprietary right in the flow of water upon his land from Dressler's property, and diversion of that flow by itself constitutes damage. See *Taylor*, 102 Va. 759. Therefore, because the diversion at issue continually deprives Wilson of a valuable riparian right and because it falls squarely within the holding of *Potts*, this issue is a proper subject for a preliminary injunction.

The two most important considerations in granting a preliminary injunction are the irreparable harm to the plaintiff and the harm to the defendant. See Michie's Jurisprudence, *Injunctions*, § 88. In this case, the total deprivation of the flow of the water onto Wilson's land constitutes such irreparable harm. As in *Potts*, Wilson is completely deprived of the right to the flow of water in its natural course. *Potts*, 179 Va. 514. As stated earlier, in *Potts*, the Town of Purcellville was ordered to take extraordinary measures to return the flow of water to Potts's riparian land. See *id*. If such a measure were not taken, the flow of water would not return to Potts's land, and he would have thereby been continually deprived of his right to the flow of water upon his land. This extraordinary measure indicates the degree of harm that results from the diversion of water from its natural course. Therefore, in the absence of an order requiring Dressler to reinstate the flow of water upon Wilson's property, Wilson will be irreparably harmed *ad infinitum*.

The harm to Dressler resulting from such an order is very small considering the number of water sources on the property. In *Potts*, the diverted water was used for human consumption. However, because the townspeople had other sources of water, the harm caused by reinstating the flow of water upon Potts's land was not great. See *id.* In this case, as in *Potts*, Dressler has other sources of water and will sustain little, if any, harm upon reinstatement of the flow. Wilson's Bill for a Temporary Injunction should therefore be granted.

## Conclusion

Wilson has the riparian right to the undiverted flow of water upon all riparian land in his ownership. Dressler's diversion of the water in question violated Wilson's proprietary right in the flow of such water upon his land. Therefore, because the case at hand appears to fall squarely within the holding of *Purcellville v. Potts*, and Dressler's use is unreasonable, a preliminary injunction enjoining Dressler from the continued diversion should be granted.