420

# CIRCUIT COURT OF ROCKINGHAM COUNTY

Town of Broadway
and Locke Willow Farm, L.L.C.

v.

James David Sarco,
Renalds Farm, Inc.,
Harry P. Propst,
Karen J. Propst,
Lewis C. Armentrout, Jr.,
Helen R. Armentrout,
David B. Arbogast,
Holsinger & Holsinger, L.C.,
and Kathryn Jean Baker

June 18, 2010

Case No. CL09-00601

BY JUDGE THOMAS J. WILSON, IV

This matter came before the Court for trial on the Town of Broadway's ("Broadway") and Locke Willow Farm's ("Farm") Complaint for Declaratory Judgment seeking a judicial determination of their rights in the spring. By stipulation between the parties, the case was submitted on their respective exhibits and briefs for the reason that the facts are not in dispute, and the precise legal issue to be determined by the Court is agreed upon and presented to the Court in the parties' briefs. The Court heard final arguments on May 14, 2010. Having reviewed the trial exhibits and

the memoranda of counsel, the Court now finds for the Defendant, James David Sarco.

The outcome of this case is controlled by the interpretation of the language of an 1810 deed from William Woods to John Roller. This deed conveyed in fee simple a tract of land ("spring tract") subject to certain restrictions regarding water rights reserved by the grantor (now "mill tract") to the water flowing from the spring located on the spring tract. The deed's language relevant to these water rights reads as follows:

> except that the water hereunto appertaining is not to be turned out of its natural channel or bed to the injury of the Mills below nor is there anything to be done to a sinkhole above the said Spring so as in anywise to injure the said spring but the said John Roller, his heirs, or assigns may make use of the water for family use for his stock of cattle and horses to drink thereof, and for a distillery and no other use whatever, and any water that may run through the said distillery shall immediately be turned into the natural channel of the said Spring branch. . . .

(Def. Ex. 4.)

Prior to the conveyance to Roller, the Woods property encompassed the subject sinkhole, the subject spring, and all real property adjacent to the water flowing from the spring (the spring branch) to its intersection with the Shenandoah River. A common source of title has been established between Sarco and the Farm. The spring was the sole source of power for the "Mills below" located on the residue retained by Woods.

The issue before this Court is whether John Roller, or a successor owner to the spring tract, could divert approximately 1.5 million gallons per day (Pl. Ex. 8, 10.) from the natural channel or bed of the spring branch and out of the watershed of the spring branch. Broadway has separately contracted with the Farm for the right to withdraw such water. (Def. Ex. 92.)

Generally, Broadway and the Farm contend that the deed from Woods to Roller conveyed all water rights except such usage that would actually injure the Mills. Sarco contends that the deed conveyed water use limited to family, cattle, horses, distillery, and no other use whatever.

First, the Court notes the longstanding rule of construction that "a deed is construed most strongly against the grantor and in favor of the grantee. This rule has been called one of the most just and sound principles

of the law because the grantor selects his own language." *Hite v. Town of Luray*, 175 Va. 218, 224 (1940). In construing the 1810 deed, the Court must consider the instrument's language "along with the facts surrounding and in the light of the purpose intended to be obtained, *viz.*, to secure to the [grantor] an amount of water sufficient to properly operate his mills." *Id.* at 227.

Had the deed been silent on water rights, the spring tract owners would not have the right at common law to divert water out of the watershed. *Gordonsville v. Zinn*, 129 Va. 542, 558 (1921). The Court recognizes that interpreting the language of a deed as conveying what would pass automatically at common law may render that language legally superfluous. *Hite*, 175 Va. at 226. However, if it is clear, as in *Hite*, that the grantor intended such a common law grant or reservation, the Court will give effect to such meaning. *See id.* at 227. At common law, the spring tract owners would have the:

> equal right to the reasonable use of the water running in a natural course through or by his land for every useful purpose to which it can be applied, whether domestic, agricultural, or manufacturing, providing it continues to run, after such use, as it is wont to do, without material diminution or alteration. . . .

*Id.* at 225 (quoting *Minor on Real Property* (2d ed. Ribble)). The plaintiffs take the position that the deed conveyed the right to unreasonable use, i.e. to divert water out of the watershed.

The 1810 deed states that the owner of the spring tract shall not turn the water "out of its natural channel bed to the injury of the Mills below" nor do anything to the "sinkhole above the said Spring to the injury of the Mills below." Broadway and the Farm take the position that the diversion out of the watershed will not injure Sarco because enough water would remain to turn the wheel of a mill. Based on the uncontested evidence, the Court finds that the diversion would leave enough water to turn the existing nineteen-foot steel overshot water wheel. (Def. Ex. 10.)

It is clear that, in the absence of a controlling deed, the lower riparian owner "must show some substantial actual damage occasioned by the diminution of the quantity of the water." *Gordonsville*, 129 Va. at 560. At common law, the Court could refuse to grant relief where the upstream diversion "still left flowing in the stream a sufficient quantity of water ... to supply the [lower riparian owner] at all times." *Id.* However, the

property rights of the parties here are controlled by deed, and therefore the actual and substantial injury requirement is not applicable.

As between William Woods and John Roller, the parties to the 1810 deed, the definition of the word "injury" likely meant "any diminution of that which is good, valuable, or advantageous." *Webster's Revised Unabridged Dictionary* (1828). Beyond uses for household, cattle, horses, and a distillery, therefore, any use would injure the mill owner's water rights because it would diminish the good, valuable, and advantageous flow of water. The natural interpretation of the deed is that the spring owner, except for the enumerated uses, cannot divert water in any way that will diminish the flow to the mill. This reading of the subject clause gives due regard to the facts surrounding and situation of Mr. Woods and Mr. Roller in the year 1810, when Mr. Woods owned the Mills below which were wholly dependent on the spring water for power.

Woods put similar restrictions or clauses in subsequent deeds of real estate that adjoined or encompassed a portion of the spring branch, to protect his "Mills below."

The prohibition against interfering with the sinkhole "above the said Spring" is highly instructive as to what the parties to the deed considered injurious. The parties seemed to recognize the sinkhole as a component of the subterranean water system coming to the earth's surface at the spring. The natural interpretation of the sinkhole clause is that the spring tract owner cannot do anything that would compromise the bountiful and regular flow of the spring, regardless of whether such interference left enough flow to turn the wheel of the mill.

Therefore, the Court finds that the Locke Willow Farm's proposed diversion of water of Plains Mills spring to Broadway will result in "the injury of the Mills below" and that Locke Willow Farm does not have the right to divert the water from the spring branch watershed or the stream bed to Broadway and that the water rights that Broadway wants to acquire belong to Sarco.

Regarding the rights of David B. Arbogast, Kathleen J. Baker Shilling, and Holsinger & Holsinger, L.C., identified collectively in the complaint as the "mill tract defendants," the Court finds that none of these defendants have any property interest in the water from the stream. All three mill tract defendants share a common source. These out-conveyance deeds were silent on water rights, except for the deed to Sarco, which contained an express grant of the Mill tract water rights.

Mr. Arbogast's tract is identified on the tax plat (Def. Ex. 1) as 72A1, adjacent to Sarco's tract. The tax plat shows the spring branch

crossing 72A1. The Court finds that tax plat is incorrect, as the stream veers to the east (right) just before it reaches Mr. Arbogast's property. Mr. Arbogast, who has not answered and is in default, is therefore riparian to the Shenandoah River only. Likewise, the tract of Kathleen J. Baker Shilling (tax plat 72C) is located on the Shenandoah River and across said river from Sarco and does not border the spring branch. The tract of Holsinger & Holsinger, L.C. (tax plat 73A) is located on the Shenandoah River and does not border the spring branch.

Accordingly, the Court finds that the mill tract defendants are not benefited by the deed's water restriction against the spring tract. These non-riparian (to the spring branch) owners would not have standing to enforce that provision against the spring tract owners. The benefit of that restriction flowed only to the "Mills below."

Regarding defendants Lewis C. and Helen R. Armentrout (tax plat 53), Harry P. and Karen J. Propst (tax plat 54), and Renalds Farm, Inc. (tax plat "A"), the Court finds that these defendants are riparian to the spring branch but that their titles derive from John Roller and his successors. The Court further finds that, to the extent that the spring tract defendants claim water rights based on their deeds, they have no more interest than John Roller, their predecessor in interest, or the Farm.

Each party will bear their own attorney's fees and costs.